Before we start, I don't know if y'all were here for the prior cases, but Justice Lytton became, he's unavoidably detained. He will be participating, he'll listen to the oral arguments and will be participating in the hearing. He'll be participating in the resolution of this case, but as you can see, he's not with us in the room right now. Okay? Counsel. On behalf of the appellant, Mr. Travis was charged with and convicted of three counts of first degree murder and one count of armed robbery. He was sentenced to 45 years for first degree murder. Concurrent with a 20 year sentence for armed robbery. On appeal, three issues were raised. The first one dealing with a void sentence. I guess you can't say the parties agree, but I guess the state finds that the sentence isn't void where this court can exercise its power to get rid of the armed robbery charge. But there is a disagreement between the parties with respect to the relief that should be granted on that issue. The second issue refers to an involuntary confession. The third is the appellant argued that the unrecorded statements are inadmissible in this case. For the purpose of oral argument, I'll be focusing on the second issue, the involuntary confession. If your honors have any questions with respect to the first or the third argument, I'd be happy to address those. I think you picked the right one. Okay. With respect to the involuntary confession, basically looking at a totality of the circumstances when we're looking as to whether or not a confession is involuntary. And there were four grounds that the appellant raised. Specifically, that Miranda was not scrupulously honored, that there were promises of leniency, that there was no concerned adult present, and the length of the interrogation leaned toward the involuntariness of the confession. With respect to Miranda not being scrupulously honored, the law states that once an individual invokes his right to remain silent, the questioning needs to stop. Questioning can only be reinitiated if the right to remain silent has been scrupulously honored. Failure to do so will render any subsequent statements inadmissible. There is a test that courts use to determine whether or not Miranda has been scrupulously honored. Often these factors are different, but there's four basic ones. First, that the police immediately stop the interrogation. Second, the amount of time between the interrogations, whether or not a fresh set of Miranda were given, and whether or not the second interrogation involved a different crime than the first interrogation. Here, the appellant argues that there were two instances in which Miranda was not scrupulously honored. The first one occurred immediately after Montay invoked his right to remain silent. This is where Detective Aguizio and Detective Ross, both who were in the room, get up, but as they're heading toward the door, Detective Aguizio makes a comment to Montay saying, well, sit there and see if you're going to act like a man or act like a kid about this. And based on Rhode Island v. Innis, this is a statement that Detective Aguizio knew or should have known would elicit an incriminating response. Now, after Aguizio does leave the room, the interrogation room after that, and at that time, Montay goes to, a cot is brought in for him to sleep on, and he's allowed to sleep. Forty-two minutes later, he's woken up by Detectives Powers and Nicodemus, who then reinitiate the interrogation. Going back to the law, this court has found that where a record may explain the defendant's reconsideration of his right to remain silent, that in that sort of a case, then Miranda has been scrupulously honored. Courts may also look to whether or not newly discovered evidence is presented to a defendant, and that is also a valid reason for the reinitiation of questioning. But this court has previously found that Miranda has not been honored where there is no newly discovered evidence presented to a detainee, and where there's no showing that a defendant has changed his or her mind about being questioned. And that's what happened in this case. When Montay was sleeping at the time that the officers and the detectives came back into the room, clearly there was nothing on the part that Montay did to demonstrate that he changed his mind with respect to wanting to be, or his right to remain silent. And he wasn't presented with newly discovered evidence as well. Courts have also considered the amount of time between the interrogations to determine whether or not a defendant's right has been scrupulously honored. Here again it was less than 42 minutes, most of which time the defendant was sleeping. Now when the two officers reenter the interrogation room, and this leads into the second issue, promises of leniency. Montay is visibly tired when he is being questioned, or when he's woken up. One of the detectives, Detective Powers, even has to ask him if he's up, if he's awake. So he's visibly tired at this point. He's also visibly cold. Now the law with respect to promises of leniency mandates that there needs to be a promise that's coupled with a, well it's got to be more than a mere exhortation to tell the truth. There's got to be a promise, a specific promise that's made. It can't be an open-ended kind of suggestion to help out the defendant. And here, there was a clear promise of leniency. And if I could, I would just like to state for the court what Nicodemus said when he was speaking to the defendant. He said, quote, you're a juvenile. The juvenile system is very forgiving, very understanding when people mess up. Crimes that you commit when you're a juvenile, you're not even tried as an adult sometimes. You don't even get the maximum penalties. You don't even do that. Then he goes on to say, everybody gets a clean slate when they turn 17. You're lucky you're less than 17, but in order to get those breaks, to get those chances, you have to show some remorse, some compassion. Because this was a juvenile, what was a juvenile officer supposed to be doing when all this was going on? Aren't there any certain obligations? Yes. Actually, Detective Nicodemus was a juvenile officer. He wasn't Montez's juvenile officer. But there are two standards for juvenile officers, more of an active role and more of one of just making sure the juvenile is okay. But in any event, that officer is supposed to ensure that the juvenile is not coerced in any sort of way. And it is our argument, which is in the brief, that Detective Ross, who was supposed to be the juvenile officer, did not meet his duties in this case. Because he was supposedly watching this interrogation in another room and did not stop the coercion that was occurring when Detective Nicodemus essentially told Montez that in order to be able to be tried as a juvenile, in order to avoid getting a maximum sentence, you have to confess. Well, as you pointed out, I think he said, everybody gets a clean slate when they turn 17. Yes. Yes. That is what he says. And that was very coercive at that time. Montez was, well, all up until this time, Montez had denied any involvement in the incident, in the shooting. And it was only up until he's told that he can get a clean slate in two years, once he turns 17, and that simply confessing will allow him to remain in the juvenile court system. There have been cases whereby there was an open-ended offer or there's been offers where police officers have said, we'll let the state's attorney know that you were willing to cooperate. In this case, it goes far beyond that. The officer, or Detective Nicodemus, actually suggests that he as a detective has some sort of ability to decide kind of how the case will go. He says to Montez, are you someone who's worth talking to, or should we just walk out of here and let the state basically throw you into the criminal justice system and let the case take its course, or are you going to confess to us and allow yourself to be dealt with as a kid versus a cold-blooded killer? Another thing to look to with respect to whether or not promises of leniency have been made is the time that elapsed between when the promise was made and when the incriminating statements were made. And here, the record shows that the incriminating statements occurred immediately after the promises of leniency here. So there wasn't a time for contemplation or for Montez to think about things. He heard this promise that he could have his record wiped clean, he could stay in the juvenile system, clean record at 17, and he made incriminating statements at that point. Another aspect to this is that an officer can play on the ignorance of a detainee, but with respect to juveniles, their will cannot be overcome. And things that this court can consider, determining whether or not his will was overcome, is age, intelligence, experience, and intensity of the interrogation. Montez was 15 years old at the time. He was interrogated five times over six hours, and he does have limited intelligence. They give him a cot, and they tell him to go to sleep, and then they walk back in 40 minutes or so later and wake him up. How long after that occurred did this confession occur? I don't know exactly. I think it's, well, I do know it's within 20 minutes. I think the officers walked in at 1142, and he made his confession shortly after midnight. So it was just enough time for Detective Nicodemus to state what it is that he needed to say and make his promises of leniency, and Montez made incriminating statements shortly thereafter. So about 20 minutes, I would say. The state makes reference to the fact that the trial court did not, or information regarding Montez's intelligence was not brought into court, or to the trial court, but this court should consider it, given that this is a juvenile in the interest of juveniles. And also in the Murdoch case, it was a Supreme Court case, that court did actually look to the information that was in the PSI and things that were not brought up to the court at the time. But we're trying to determine if it's voluntary or not, right? Yes. Yes. And how close is this to Murdoch or not? I think it's very different from Murdoch. Murdoch, there was a video, it's similar in that sense, but Murdoch was, there was a lot of evidence in Murdoch of voluntariness. He made a statement, the defendant in Murdoch made a statement, stating that he was speaking willingly to the officers, and he was making a voluntary statement in that case. There was a video in that case, and Murdoch didn't seem, or the trial court found that Murdoch didn't seem like he was in distress, he didn't seem like he was in fear, there was nothing about his demeanor that indicated that he was coerced in any sort of way. And the interesting thing in Murdoch is that there was a, the investigating officer was also acting as the juvenile officer. And still in that case, the court found that the defendant's demeanor in that case was so clear that he was not in distress, that he had no issues with voluntarily speaking to the officers. That even in that case, it was enough to overcome any sort of claim of involuntariness. The state argues, as you know, that they really, what was said here didn't constitute a promise of lenity, because the statement has to provide a specific benefit or something like that. But there is a testimony about treating people as juveniles versus not. What's your response to the state? I know and I've read your reply brief, but what do you say to that aspect? They say, well, here it's a plea to tell the truth, make a statement. There isn't. I think there's a lot of cases that I believe were cited to in the brief, in the original brief and the reply brief, that very much differentiate what an expectation to tell the truth. It's something where it's best to tell the truth now. Here, there is a specific benefit. The specific benefit is remaining in the juvenile court system. Another specific benefit is getting maximum penalties. He says to him, in order to get those things, you have to essentially confess. It's a specific act and you will get a specific, we will make sure that there's a specific benefit. I think it's clear within the words. If you are speaking about a juvenile who is not well-versed in the criminal justice system, although he did have contacts with the system, isn't necessarily clear on the roles of police officers and what they can do and a state's attorney who's really the only person who can do this sort of deal. This is beyond his experience. When you're dealing with juveniles, I think it's in the best interest of the juvenile to look at those things. I think it's clear that there's a specific promise that's made in exchange for a specific benefit. Just briefly, also the length of the interrogation. Specifically, the time of the interrogation and the length of the detention. The time of the interrogation I think is important is the time that the incriminating statement was made. That was roughly almost six hours later and it was close to midnight. The length of the detention, while this court may not find that all of the interrogation was particularly intense, I think the length of the detention is important. It may also be considered a tactic to have somebody sitting there and waiting for a specific amount of time. It can also lend toward the intensity of the detention and the wearing of somebody's will down. This was a juvenile again. When he did get up to, right before he made his incriminating statements, he was audibly sleeping. You can hear him snoring in the video. He was at a particularly impressionable time, lack of sleep. Although he was given offered things to eat, he had not eaten. For those reasons, based on the totality of the circumstances, we're asking that this court vacate his convictions and remand him in trial. Thank you. Ms. Kelly? May it please the court, counsel. As counsel noted, she raised three separate issues in the brief and the people feel that they have responded to all three issues in the brief. With regard to issue two, which she has argued that people would like to respond to some of the questions the court had or some of the statements that she made. With regard to the promise of lenity, which she says is so clear that people disagree that it was clear. In fact, counsel below never raised the issue. The defense counsel below did not raise the issue that that statement by Nicodemus constituted a promise of lenity. So that's why there's no finding with regard from the trial judge on that because that was not raised in the motion to suppress below. Additionally, the people would note that the state was – You know, I know you raised a point with regard to which way, you know, which way to raise below. But we're looking at the – the Supreme Court tells us we look at the totality of the circumstances and the totality of the circumstances is everything we have on the record. I mean, we're dealing with a juvenile. So you're dealing with the age, the experience. You're dealing with everything that's in this record, aren't you, really? I understand that, and that's why the people addressed the issue they pointed out. But I wanted to point out to this court that it's perhaps not so clear as appellate counsel views it because trial counsel did not view it as clear enough to have raised this issue below. Well, you raised the point that there was a statement that you're a juvenile. You're not even tried as an adult sometimes. That's correct. That's the detective statement, right. I'm sorry, is that a question? Yeah, yeah. And so that's – you raised that as saying so it's not that clear. Is that what – Well, it's not that clear, and then the people cited examples in which Casey might not be charged as a juvenile or he might be – excuse me – might be charged under criminal laws. Of course, this is a murder investigation. That's correct. People agree that the statute says that if it's a charge of murder, it's an automatic transfer, it must be prosecuted under criminal laws. But it could be that the state might have elected to charge him with something other than murder. It could be that he was charged with murder and then found guilty of something other than murder, in which case, unless the people sought to have him sentenced under the criminal code, it could go back to sentencing under the juvenile code. You see why I'm asking that question? I understand. Because you can say, well, you can be charged with a number of things. Well, this is a murder investigation. I understand. And in light of that, though, how about the statement, everybody gets a clean slate when they turn 17? That's problematic. Yeah. And the other thing – I mean, it's no secret I'm a huge fan of creative police work, but letting this fellow – they let this kid go to sleep. Twice a day. And then they go in and wake him up 40 minutes later, and it's assuming he's been asleep the whole time. Now, you know why they did that. I know why they did that. And why isn't that being on the bail? Actually, I think the record shows that he was not asleep the whole time, that they didn't bring the blanket in right away, so it was actually less than 40 minutes. So he actually had less than 40 minutes. I understand that. So why isn't that outside? It's a shorter time period than certainly I would have liked to see on this. I don't know why they did it, except that they thought perhaps they were getting into the early morning hours. I mean, that's a well-known tactic in even terrorist interrogation. Let somebody sleep, wake them up, and do that to them. And this is a kid. Now, not a very nice kid, but still, we don't do the rules based on these cases. And don't you think that's pretty troubling? It's problematic. But I would also point out that there's approximately 10 minutes between the time that these statements were made with regard to treatment as a juvenile and the time that he confessed. And I believe that those statements are at approximately 1146 or so in the record, and that the confession was closer to midnight. And in between, there were many, many exhortations to tell the truth, or, you know, you certainly didn't intend this to happen.  It was your co-defendant's idea. It came in between. This was not, he didn't make these statements, and the defendant said, okay, here's my confession. In the Murdoch case, when they're talking about some of the dialogue with the police, they talk about, in Murdoch, they talk about how it was conversational, non-confrontational, and so forth. And the video in this case shows this sort of good cop, bad cop routine, but a lot of screaming. Just with one. And then when the defendant screamed back at him and said, I don't want to talk to you anymore, it ended. And when they woke him up to resume the questioning at closer, at 11-something, there was a different officer who actually said, you know, being confrontational doesn't work with you. You get very defensive. And so he was, as the trial judge characterized, soft-spoken. There was only one, I believe the one officer, who only questioned him the one time, who was confrontational, and the defendant did not respond well to that, and that's apparent on the tape. So the change in circumstances, this is not a situation where the defendant has to reinitiate questioning, but counsel said there was no change in circumstances. Well, it was. It was a different person coming in, changing the tenor of the questioning. So in the totality of the circumstance test, how much consideration of any should we give to that? To which the fact there was a different officer who was soft-spoken? And to the screamer. Well, that was a brief. That was a brief interlude. It did not go on for very long. And the people would submit that it was scrupulously honored and that he turned around to leave the room. He made a comment, but he didn't wait around for an answer. It was not a comment that was intended to elicit an incriminating response. Remember the comment. I'm sorry? Remember the comment. That man up? Yeah, something like that. It's in the briefs. And that because it was Egizio and Ross, the juvenile officer that was in the room, the people believe that that is why Ross did not reenter the last time and only watched on a monitor from another room. Under the totality of the circumstances, would it be unreasonable to argue that this kid had no reason to believe that he was, A, going to ever get any more than 10 minutes of sleep at a time or leave that room until he confessed? Well, he was in there, and we don't know what happened between the 637 oral statement when he agreed to give a video statement, but they didn't come back until 9 o'clock. He had slept earlier at some point. There had been a bed in there. He might have taken a nap at that time. We don't know what that passage of time was about. We know the police were continuing to investigate, trying to find Jeremy. Then they said, okay, we found Jeremy. Do you still want to give a video statement? Oh, yeah, sure. Then they come back in and say, okay, now we've talked to Jeremy. So I don't think the police were necessarily trying to get him into a situation of sleep deprivation, but I don't know. They didn't say that they were. They might have been? I can't say what was subjectively on their minds. I've never been a police officer. Have you seen that new movie where they never cover him up? Zero Dark Thirty? I just saw it. One of the points I wanted to make with regard to the information that came out in the pre-sentence investigation of his mental impairments, perhaps, is I don't believe that Murdoch relied on that. Murdoch mentioned that there was information in the record regarding Mr. Murdoch's mental capacity, but nonetheless they said looking at the evidence presented at the hearings. Also, I would point out in Murdoch that that was before the judge. In our case, the motion to suppress was heard before the stipulated bench trial and the sentencing and the information that came out of the sentencing. In this case, Murdoch's information came out of the sentencing hearing. This suppression hearing took place after his post-conviction petition. So even though it was, I believe, the fourth judge who was now hearing Mr. Murdoch's case, who heard the motion to suppress, in fact, if he had familiarized himself with the entire file, he would have, in fact, seen the information that was in Murdoch's pre-sentence investigation regarding his mental impairments. This trial judge never did, and that's why I don't believe it's a problem. I'm asking for obvious reasons about Murdoch because in Murdoch, the majority, and this is a 4-3 decision in Murdoch, I think I'm correct. I think so. And the majority points out that in that case, there was no physical, no evidence of any physical or mental abuse, and there was no thing that appeared to be at any time confrontational in the whole dialogue with the juvenile in the Murdoch case. And so I guess arguably this whole, part of the circumstances of this case, would they be arguably of physical nature when you're having this sleep problem? I had not thought of that. And I don't know if the record in Murdoch addresses it. It was the same passage of time in Murdoch, and approximately the same time of day as well. I don't know if there were any conditions under which he was awake, and similar to what happened here. I don't remember that part from the facts. Well, in Murdoch, and I've got the case in front of me, so this is unfair. I'm not trying to be unfair about it. In paragraph 46 of the case, they say, we consider the defendant a physical condition. The defendant did not appear nervous at the time during the videotape statement, but some nervousness on the defendant's part is not inconsistent with voluntariness. On the videotape, the defendant does not appear to be sweating or shaking. He does not appear to be in any type of distress. Rather, the defendant appears, for the most part, calm and alert. He does not appear tired or exhausted. And he was offered food, drink, and the opportunity to use the bathroom. And then they talk about the trial court's credibility finding that the defendant was in good physical condition during the detention and interview. Would you say that's similar to our situation or not? I would say the trial judge didn't make any findings with regard to his demeanor, except that he was not a normal 15-year-old. When she considered his interaction with the criminal justice system, he seemed more savvy with regard to that. Again, I don't believe this issue was argued below, and therefore the judge made no findings on it, but the DVDs were available to everyone. And we call counsel's statement, and when the defendant did put his shirt over his head and seemed to be cold and was wrapped up in the blanket, it's all on the DVD. The DVDs were where we're getting the information with regard to his appearance and physical condition. I understand. And again, we've got a horrible crime here, but would it be okay for police to interrogate kids like this if they're charged with shoplifting? Put them in a room, give them a cup, let them sleep a little bit, wake them up? I don't think that would happen with shoplifting. And of course, if they told the kid that he could be prosecuted as a juvenile, there'd be no problem with that one. I don't think that there's a difference. I think you can say, well, you can be more abusive in a serious crime situation than you can in a lesser crime situation. But it's the people's position here that the police were not intentionally trying to wear him down by the timing of the questioning and by the timing of his naps. Some other teenagers might not be tired until midnight. I think there are plenty of teenagers who would not be tired by midnight. I don't think it's a given that every teenager is going to want to go to bed at 9.30 or at 10.30 at night. I think those were the only points that I wanted to respond to. Otherwise, the people would rely on their brief and be glad to answer any other questions the court might have. And you said Murdoch is sort of an important case. You're the one who ran it. I do. I did. I added it as authority. It came out right after my brief was filed. I think that there are some cases, some of the facts of Murdoch are stronger for the people and weaker for us. And then there are some areas, I think we have a juvenile officer who certainly made more of an effort than Detective Mashinsky did, and therefore there are some facts in this case. We also have a mom who was at the station who never asked to talk to him and he never asked to talk to mom. So I think that Murdoch is a very helpful case. And I think there are some facts in our case that weigh more heavily in our favor under challenging circumstances. And there are some facts in Murdoch that are better than they are in our case. Thank you, Ms. Kelly. Some rebuttal? To answer your question, Justice Schmidt, clearly they were trying to wear him down. We have to remember that this incident occurred around 1 o'clock in the afternoon. Monti's not picked up until 5.30. There's a lot that they knew, a lot of witnesses that they had talked to within that time period. And so the moment that he went into that room, he was not going to be let out. As I indicated in my reply brief, in one of the videos early on, you can see that there is a bed that has already been brought in. If you're being questioned and then someone brings in a bed, it's very clear that you're not going home anytime soon when they're suggesting that you should probably take a nap, you're probably going to be here for a while. The fact that when the officers came back into the room at 11.42, with absolutely no new evidence, it leans toward what Justice Schmidt was suggesting, that this was a tactic, that they allowed him to sleep. There wasn't any investigations going on at that point. It was almost midnight at that point. There was nothing else going on. They allowed him to go to sleep, they allowed him to get tired, and they intentionally woke him up at a time when he was more susceptible. And they did give him promises of leniency. I just want to refer to People v. Echols. This is a third district case. And just the different kinds of promises of leniency that we're talking about here. In Echols, it was found that there were not promises of leniency, where the detective told the defendant,  the court found that such an offer does not imply that the state's attorney will be lenient, simply because he is made aware of a defendant's cooperation. But there was a case, and this is cited in Echols, where there was a promise to just assist the defendant in obtaining a bond and a sentence of probation. And that was found to be vastly different than just simply saying, I'll tell the state's attorney that you cooperated. The courts have found that where there's a coupling of advice, a suggestion of a benefit. And that's exactly what we have here. The clear thing is everybody, without exception, everybody gets a clean slate when they turn 17, and you're lucky. He's telling him that you fall into this. You're lucky that you are not 17, because you will get a clean slate when you turn 17. But in order to get these breaks that I told you about, you have to confess. That's the message that was told to Montay on that day. The state suggests that Montay was a little bit more savvy with the criminal justice system, but in the record we hear Detective Nicodemus tell Montay, well, everybody with the last name Travis isn't bad. It seems like there seems to be something with his family in the neighborhood and the police that they happen to know his family, and that could be why he may have had interactions with the police. It may not have had anything to do with, as far as I can tell, the one charge he had when he was 13. It may just be because his family is, unfortunately, known by the police in Will County, and that's why he may have had or maybe seemed to be more savvy. I know we're looking at the totality of the circumstances, but just the motion that was presented before the court and argued, the defense attorney at that point did allege that the confession was a false confession, that it was a product of suggestion and fear. So the issue of the leniency, I think, was brought up because it is a suggestion. He was put in fear, and that led to the involuntariness of this confession. Thank you, Ms. Green. Ms. Kelly, thank you, too, both for your arguments here this afternoon. The matter will be taken under advisement. As I said before, Justice Litton will be participating in the resolution of this matter. And right now we'll be in a brief recess for a panel change for the next case.